UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

FARIBA PARVA and
PARVEEN NASAB,

    Plaintiffs,

v.

ANTHONY BLINKEN,
*U.S. Secretary of State,*

    Defendant.

Civil Action No. TDC-23-3287

**MEMORANDUM OPINION**

Plaintiffs Fariba Parva and Parveen Nasab have filed a civil action against United States Secretary of State Anthony Blinken, in which they seek to compel certain U.S. Department of State officials to adjudicate visa applications submitted on behalf of Parva's husband and son pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b), 702, and 706 (2018), and the Mandamus Act, 28 U.S.C. § 1361 (2018). Defendant ("the State Department") has filed a Motion to Dismiss. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

**BACKGROUND**

**I.    Statutory Requirements**

A United States citizen seeking to sponsor foreign relatives for immigrant visas must first file a Form I-130, a Petition for an Alien Relative, with United States Citizenship and Immigration Services ("USCIS"). *See* 8 U.S.C. § 1154(a)(1)(A) (2018); *see Moore v. Frazier*, 941 F.3d 717, 719-20 (4th Cir. 2019) (noting that the Form I-130 Petition "is the first step to having a non-

citizen's immigration status reclassified based on a familial relationship to a U.S. citizen"). Derivative applications may be filed on behalf of immediate relatives of the foreign relative, including for a spouse and children. 8 U.S.C. § 1154(a)(1)(A); 8 U.S.C. § 1101(a)(15)(K)(ii)-(iii). If USCIS approves the petition, the application is sent to a State Department processing center. *See* 8 C.F.R. §§ 204.2(a)(3), (d)(3) (2024). The foreign relatives must then submit another application, a Form DS-260, Immigrant Visa Application, and await an interview with a consular officer. 22 C.F.R. § 42.63(a)(1) (2023). Under federal regulations, after the interview, "the consular officer must issue the visa, refuse the visa under [Immigration and Nationality Act ("INA") section] 212(a) or 221(g) or other applicable law, or … discontinue granting the visa." 22 C.F.R. § 42.81(a). If the application is refused, and within one year of the refusal the applicant provides "further evidence tending to overcome the ground of ineligibility on which the refusal was based," then "the case shall be reconsidered." 22 C.F.R. § 42.81(e).

**II.    Application for Immigrant Visas**

In March 2008, Plaintiff Parveen Nasab, a naturalized United States citizen, filed a Form I-130 petition on behalf of her daughter, Plaintiff Fariba Parva, a citizen of Iran. The Form I-130 was approved and forwarded to the National Visa Center ("NVC"), which is part of the State Department, but a visa did not become available pursuant to applicable numerical limits until 2020, at which time Parva was informed by the NVC that she could begin immigrant visa processing. In October 2020, Parva submitted to the NVC a Form DS-260 and additional documents on behalf of herself and derivative visa applications on behalf of her husband, daughter, and son, all citizens of Iran. In March 2021, the NVC found all of the applications to be documentarily qualified and transferred the file to the United States Embassy in Ankara, Turkey ("the Embassy") for processing. On or about November 28, 2022, Parva, her husband, and their two children were

interviewed by the Embassy, which then issued immigrant visas to Parva and her daughter in December 2022 but refused to issue visas to Parva's husband and son ("the beneficiaries"). The Embassy notified Parva that it had refused those two applications pursuant to section 221(g) of the INA, which generally provides that a visa shall not be issued if "it appears to the consular officer" that the applicant is "ineligible to receive a visa," "the application fails to comply" with the relevant statutory or regulatory provisions, or "the consular officer knows or has reason to believe" that the applicant is ineligible to receive a visa, 8 U.S.C. § 1201(g), and that the applications had been placed into administrative processing. Parva was also notified that she needed to submit on behalf of the beneficiaries Forms DS-5535, which request more information about the beneficiaries' "relatives, address history, employment history, contact information, and social media history." Compl. ¶ 17, ECF No. 1. Parva promptly submitted the requested forms on December 9, 2022. Plaintiffs assert that the Embassy has not asked for any further information since that time and has not finally adjudicated the applications.

### III.   Procedural History

On December 4, 2023, Plaintiffs filed the Complaint in this case, pursuant to the APA and the Mandamus Act, in which they request an order from the Court compelling the State Department to adjudicate the applications within 30 days. In the Complaint, Plaintiffs argue that the State Department has a mandatory duty to process and adjudicate the beneficiaries' applications, and that they are entitled to the requested relief because there has been an unreasonable delay in this adjudication.

After filing the Complaint in this case, Plaintiffs received a second notice from the Embassy, dated January 16, 2024, stating that the consular officer, after reviewing all available information had "determined that you have not established that you are eligible for a visa and

denied your visa application under" section 221 of the INA, 8 U.S.C. 1201(g). Refusal Worksheet at 1, Opp'n Ex. 1, ECF No. 11-1. This second notice further advised that "[a]dditional security screening is being conducted," and that "[d]epending on the screening results, a consular officer may reconsider your eligibility for the visa." *Id.*

## DISCUSSION

In the Motion to Dismiss, the State Department argues that the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because the Plaintiffs cannot establish a clear, non-discretionary duty for the State Department to act. Specifically, the State Department argues that by refusing the beneficiaries' application in November 2022, the consular officer made a final decision, and that the State Department is not required to take any further action regarding the applications. The State Department further argues that, even if it has a duty to take further action, the Complaint should be dismissed under Rule 12(b)(6) because the delay in adjudicating the beneficiaries' applications has not been unreasonable.

### I.    Legal Standards

The Motion to Dismiss is filed pursuant to Rule 12(b)(1), based on an alleged lack of subject matter jurisdiction, and under Rule 12(b)(6), for failure to state a claim. As to Rule 12(b)(1), it is the plaintiff's burden to show that subject matter jurisdiction exists. *Evans v. B.F. Perkins Co., Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). Rule 12(b)(1) allows a defendant to move for dismissal when it believes that the plaintiff has failed to make that showing. When a defendant asserts that the plaintiff has failed to allege sufficient facts to establish subject matter jurisdiction, the allegations in the complaint are assumed to be true, and "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). When a defendant asserts that facts outside of the complaint deprive the court of jurisdiction, the Court "may consider evidence outside

the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *Kerns*, 585 F.3d at 192. The court should grant a Rule 12(b)(1) motion based on a factual challenge to subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

## II.     Non-Discretionary Action

The State Department first seeks dismissal on the grounds that the APA permits a court to compel agency action only when the agency has failed to take a discrete, non-discretionary action that it is required by law to take. Under the APA, a court may compel "agency action" only when it has been "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706. Thus, a plaintiff must assert that an agency failed to take a discrete action that it was required to take. *Gonzalez v. Cuccinelli*, 985 F.3d 357, 366 (4th Cir. 2021). If the action at issue is one that is committed to the discretion of the agency, the Court may not, pursuant to the APA, order the agency to undertake that action. *See* 5 U.S.C. § 701(a)(2). Relatedly, the State Department argues that in the absence

of a clear, non-discretionary duty to take an action, a court cannot invoke the Mandamus Act as a basis to order the State Department to undertake that action. *See* 28 U.S.C. § 1361 (granting federal district courts the authority to compel a federal agency "to perform a duty owed to the plaintiff").

Here, Parva has identified the non-discretionary action to be based on 22 C.F.R. § 42.81(a), which provides in part that:

> When a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa.

22 C.F.R. § 42.81(a). The State Department argues that it took this action when, on or about November 28, 2022, it refused to issue the visa pursuant to section 221(g) of the INA, 8 U.S.C. § 1201(g). The State Department further argues that even if this refusal did not constitute a final adjudication, any reconsideration of that decision is not mandatory and is a matter of discretion.

Plaintiffs, however, have plausibly alleged that the State Department has not actually completed the refusal of the visa applications. In the related context of assessing whether a consular officer has taken a final action that is nonreviewable under the doctrine of consular nonreviewability, courts have frequently found that a refusal of a visa under 8 U.S.C. § 1201(g) was not actually final where the State Department specifically noted that the case was placed in "administrative processing" or requested additional information. *See, e.g., Jahangiri v. Blinken*, No. DKC-23-2722, 2024 WL 1656269, at *6 (D. Md. Apr. 17, 2024) (collecting cases); *Al-Gharawy v. U.S. Dep't of Homeland Security*, 617 F. Supp. 3d 1, 6, 16-17 (D.D.C. 2022) (permitting consideration of an unreasonable delay claim where the plaintiffs applied for visas through Form I-130s and were later informed after their interviews that their applications had been refused and required further administrative processing); *Giliana v. Blinken*, 596 F. Supp. 3d 13,

19 (D.D.C. 2022) (finding that where a visa application was refused "for administrative processing," the doctrine did not apply and the court could consider a claim of unreasonable delay). "Administrative processing generally means that additional information is needed before a consular officer can determine whether an applicant is qualified for the visa" and "means that the initial 'refusal' is not the end of the process." *Giliana*, 596 F. Supp. 3d at 18. The State Department's own public guidance states that a refusal may be reversed after administrative processing. *See* Administrative Processing Information, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html (last visited Sept. 3, 2024) (stating that "[i]t is possible that a consular officer will reconsider a visa application refused under [section] 221(g) at a later date, based on additional information or upon the resolution of administrative processing, and determine that the applicant is eligible"). Thus, where, as here, the State Department specifically placed the visa applications in "administrative processing," Compl. ¶ 16, there is a plausible argument that the refusal was not final.

Second, even if the non-final step of refusing the visa application could be deemed to have satisfied the requirement that a consular officer presented with an immigrant visa application "must issue the visa" or "refuse the visa," 22 C.F.R. § 42.81(a), that same regulation provides in a separate subsection that "[i]f a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered." 22 C.F.R. § 42.81(e). Although the State Department seeks to escape this mandatory language by citing *Yaghoubnezhad v. Stufft*, No. 1:23-cv-03094 (TNM), 2024 WL 2077551 (D.D.C. May 9, 2024), in which the court found that there was no mandatory duty for the State Department "to review any *particular* visa refusal within a certain time," that case interpreted 22 C.F.R. § 41.121(a), which relates to refusals of

nonimmigrant visas and which lacks the mandatory language that appears in 22 C.F.R. § 42.81(e), the regulation that applies to immigrant visas and is at issue here. *See Yaghoubnezhad*, 2024 WL 2077551, at *8-10. Where the plain language of the relevant regulation requires reconsideration when such additional information is submitted, and it is fair to infer at this early stage that the information submitted provided further evidence to overcome the ground of ineligibility, the Court finds that Plaintiffs have identified a non-discretionary action that the State Department has failed to take.

Finally, Plaintiffs have also identified a non-discretionary duty to adjudicate a visa application based on the statement in the INA that "All immigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b). Although the State Department argues that this language does not actually require adjudication, it relies on the placement of this provision within the INA, and the conclusory position that a requirement that a visa application be adjudicated is too burdensome to have been intended. Such arguments, however, do not overcome the plain language of the statute, which requires adjudication. *See, e.g., Azam v. Bitter*, No. 23-4137, 2024 WL 912516, at *6 (D.N.J. Mar. 4, 2024); *see also Lovo v. Miller*, 107 F. 4th 199, 212 (4th Cir. 2024) (stating that when considered in the context of the statute, the presence of "'unmistakably mandatory' language, such as the word 'will,' can provide sufficient evidence of the unequivocal command required" for a finding that "an agency is compelled to act" (quoting *Ewell v. Murray*, 11 F.3d 482, 488 (4th Cir. 1993))).

Here, where the visa applications were refused but then placed in administrative processing, and Plaintiffs have submitted additional information to overcome the alleged ground of ineligibility, Plaintiffs have plausibly alleged that there is a mandatory duty to reconsider the refusal and adjudicate the visa applications. The Court therefore declines to dismiss this case

pursuant to Rule 12(b)(1) based on the failure to allege that there was a non-discretionary agency action that has been unlawfully withheld.

## III.  Unreasonable Delay

The State Department also seeks dismissal pursuant to Rule 12(b)(6) on the grounds that the Complaint does not allege a plausible claim that, pursuant to the APA, agency action on the visa applications has been "unreasonably delayed." 5 U.S.C. § 706(1). In response, Plaintiffs primarily argue that it is inappropriate at the motion-to-dismiss stage to consider whether the delay was unreasonable. Although Plaintiffs seek to compel agency action under both the APA and the Mandamus Act, "the standards for obtaining relief are essentially the same" under both statutes. *Vietnam Veterans of America v. Shinseki*, 599 F.3d 654, 659-60 n.6 (D.C. Cir. 2010); *Giliana*, 596 F. Supp. 3d at 19; *Jahangiri*, 2024 WL 1656269, at *14. Thus, the Court reviews both counts under the same standard to determine if Plaintiffs have alleged a plausible claim of unreasonable delay.

The United States Court of Appeals for the Fourth Circuit uses a multi-factor analysis to determine "whether agency action has been unreasonably delayed" so as to warrant judicial action. *Gonzalez*, 985 F.3d at 375 (quoting *Fed. Regul. Comm'n v. Powhatan Energy Fund, LLC*, 949 F.3d 891, 903 (4th Cir. 2020)). These considerations, originally set forth in *Telecommunications Research & Action Center v. Federal Communications Commission*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"), consist of the following six factors ("the *TRAC* factors"):

- (1) the time agencies take to make decisions must be governed by a rule of reason;

- (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

- (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Gonzalez*, 985 F.3d at 375; *TRAC*, 750 F.2d at 80 (internal citations omitted).

While the Fourth Circuit has stated that "[a] claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage," *Gonzalez*, 985 F.3d at 375, judges in this District and in other courts have considered whether, based on an application of the *TRAC* factors to the particular circumstances at issue, a motion to dismiss such a claim should be granted. *See, e.g., Jahangiri*, 2024 WL 1656269, at *8 ("[M]any courts have found it appropriate to analyze the TRAC factors even on a motion to dismiss"); *Dennis v. Blinken*, No. 22-2522-JRR, 2023 WL 4764576, at *4 (D. Md. July 26, 2023); *see also Giliana*, 596 F. Supp. 3d at 19 ("On a motion to dismiss, the [c]ourt is not determining whether there has been an unreasonable delay; rather, it is evaluating whether a plaintiff's complaint alleges enough facts to state a plausible claim for unreasonable administrative delay." (citations omitted)).

The first and second *TRAC* factors, which relate to the time period of delay, are frequently considered together. *See Giliana*, 596 F. Supp. 3d at 20; *Jahangiri*, 2024 WL 1656269, at *8. These factors address "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Giliana*, 596 F. Supp. 3d at 20 (quoting *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014)). Because the reasonableness of the delay depends in part on the need to address "competing priorities,"

10

courts may also consider whether there is evidence that "the agency had treated the petitioner differently from anyone else." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003).

At the outset, the parties dispute how the period of delay should be measured. The State Department asserts that it should be measured from the date that the visa applications were refused on or about November 28, 2022 to the date that Plaintiffs filed this action on December 4, 2023, approximately one year later. When the time period from the filing of the Complaint to the completion of briefing on the Motion on May 31, 2024 is also considered, the time period is approximately 18 months. In contrast, Plaintiffs assert that the relevant period of delay should be measured from when they originally submitted the visa applications in October 2020. When determining the length of delay, courts usually start the clock "from the last Government action." *Meyou v. U.S. Dep't of State*, No. 21-2806 (JDB), 2022 WL 1556344, at *3 (D.D.C. May 17, 2022). Thus, the Court agrees with the State Department that where there was a specific action taken on or about November 28, 2022 when the beneficiaries were interviewed and the visas were refused, the relevant period is the approximately 12 months, or one year, from that date until the filing of the Complaint or, at most, a period of 18 months up until the completion of briefing on the Motion. Notably, where the State Department issued a second refusal of the visa applications on January 16, 2024, the time period could fairly be deemed to be only six months from that date until the present.

As for whether there is some statutory timetable for resolution, Plaintiffs cite only to the Consolidated Appropriations Act of 2000, Pub. L. No. 106-113, § 237(a), 113 Stat. 1051 (1999), which states that "[i]t shall be the policy of the Department of State to process immigrant visa applications of immediate relatives of United States citizens . . . within 30 days of the receipt of

11

all necessary documents from the applicant." 8 U.S.C. § 1201 note (Processing of Visa Applications). However, where this statement is described as a "policy," courts have found that the Consolidated Appropriations Act "did not mandate a statutory deadline for . . . visa adjudications." *Jahangiri*, 2024 WL 1656269, at *10. Although courts have considered such guidance as moving the second factor in favor of the plaintiff, it does so only to a limited degree. *See Giliana*, 596 F. Supp. 3d at 21-22 (finding that a non-binding 180-day timeline for the processing of immigration benefit applications expressed by Congress in 8 U.S.C. § 1571(b) "nudges the second factor in [the plaintiff's] favor, but only slightly," and ultimately finding that the first two factors favored the State Department).

"In the absence of a congressionally supplied timeframe, courts typically look to case law for guidance." *Jahangiri*, 2024 WL 1656269 at *9. The State Department cites case law in which courts have found that delays of multiple years in the adjudication of Forms I-130 were not unreasonable. *See, e.g., Begum v. U.S. Dep't of State*, No. 22-0478-JMC, 2022 WL 16575703, at *7 (D. Md. Oct. 31, 2022) (stating that "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable," and finding that a delay of 33 months was not unreasonable (quoting *Sarlak v. Pompeo*, No. 20-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020))); *Dennis*, 2023 WL 4764576, at *7 (finding that a delay of 30 months was not unreasonable); *Tekle v. Blinken*, No. 21-CV-1655 (APM), 2022 WL 1288437, at *1, 3 (D.D.C. Apr. 29, 2022) (granting a motion to dismiss where the delay was 23 months in administrative processing before the filing of the complaint and 33 months when adding the time up to resolution of the motion).

The Court need not and does not find that delays of that length cannot support a claim of unreasonable delay. Here, the delay from the time when the visa applications were refused and

12

were placed into administrative processing was approximately 12 months before the filing of the Complaint, and another action, consisting of the second refusal, occurred only six months ago. In *Jahangiri*, a more similar case than those cited by the State Department, the court determined that the first two *TRAC* factors weighed against the plaintiff where the complaint was filed only 11 months after the visa application was refused following an interview with a consular officer and placed into administrative processing, and only 17 months had passed as of the time of the resolution of the motion to dismiss. *Id.* at *2, 10-11. Where the delay here is comparable, and far shorter than in many cases in which the delay was deemed not unreasonable, the Court finds that the first two factors weigh against Plaintiffs. This conclusion is bolstered by the fact that, as in *Jahangiri*, Plaintiffs have not pointed to "anything specific" to distinguish their case from others and have not alleged facts showing that they have been treated any differently from "similarly situated applicants whose applications were adjudicated in a shorter amount of time." *Id.* at *11 (quoting *Begum*, 2022 WL 16575703, at *8).

The third and fifth factors, relating to the impact of the delay, weigh in favor of the plaintiff when the complaint pleads "sufficient facts to show that [the plaintiff's] interests are weighty, implicate health and welfare, and are harmed by the long wait." *Gonzalez*, 985 F.3d at 375. Separation from family members and its collateral consequences can provide a basis for these factors to weigh in favor of the plaintiff. *See Dennis*, 2023 WL 4764576, at *8 (finding that these factors favored the plaintiff where the delay prolonged their separation from their minor daughter); *Jahangiri*, 2024 WL 1656269, at *11 (finding that factors three and five favored plaintiffs where they were fiancées separated from each other and alleged that they had "put all of their plans, hopes, and dreams on hold" and would "continue to suffer financially, psychologically, and emotionally indefinitely until they [were] reunited").

Here, Parva alleges that the delay is causing emotional, physical, and financial burdens, based on her separation from her husband and son for two years, including that they "will never be able to recapture the time with their family that they have both lost and will continue to lose," and that these relatives are needed in the United States to help support the family. Compl. ¶¶ 22, 28. Plaintiffs also cite the adverse impact on Nasab, who is 88 years old and has numerous health issues, including dementia, atrial fibrillation, transient ischemic attacks, and a recent stroke, and note that her doctor believes that having family present would contribute to her health. Where these considerations implicate "human health and welfare" rather than "economic regulation," and the delay has some prejudicial impact based on the separation from family, these factors weigh to some degree in favor of Plaintiffs. *Gonzalez*, 985 F.3d at 375. The Court notes, however, that the delay in this case does not present particularly compelling impacts on health and welfare, such as separation that leaves visa applicants at risk of physical harm in their present location or prevents such individuals from accessing lifesaving medical procedures in the United States.

For the fourth *TRAC* factor, the effect of expediting action on agency activities of a higher or competing priority, the State Department asserts that "it is well known that the Department of State does not have infinite resources and that the delays associated with visa determinations can be extensive." Reply at 9, ECF No. 15. However, where the State Department has not alleged any particularized resource constraints or competing priorities impacting the beneficiaries' visa applications, the Court cannot and will not "rely on the agency's allegations to find as a matter of law that this factor necessarily favors the agency" on a motion to dismiss. *See Gonzalez*, 985 F.3d at 376. Courts, however, have found this factor to "carry the greatest weight" and have denied relief "where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." *Jahangiri*, 2024 WL 1656269, at *11 (quoting

*Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020) (internal alterations omitted)). Therefore, for many courts, even at the motion-to-dismiss stage "it is Plaintiffs who must allege facts and not make bald assertions" to dispute the presumption that granting relief would simply re-order the processing line. *Id.* at *12. Here, where Plaintiffs have not done so, this factor weighs against them.

Lastly, when a plaintiff does not plead any facts on the sixth factor relating to any impropriety by the agency in relation to the delay, courts do not give it any weight and it is thus considered neutral. *Id.* Here, Plaintiffs do not allege any impropriety on behalf of the State Department. Thus, the sixth factor remains neutral as to both parties.

Considering all of the factors together, the Court finds that Plaintiffs have not stated a plausible claim for relief based on unreasonable delay. In *Jahangiri*, in which the plaintiffs similarly filed a claim under the APA and the Mandamus Act for unreasonable delay by the same embassy in the processing of a visa application for an Iranian national fiancée, the court dismissed the action where the delay was only approximately 11 months as of the filing of the complaint and 17 months as of the filing of the court's opinion, and while the plaintiffs had sufficiently alleged that their health and welfare was impacted by the delay due to the separation of fiancées, there were insufficient allegations to show that expediting the application would not simply re-order the queue among similarly situated applicants, and there were no allegations of impropriety by the State Department. *Id.* at *10-12.

Here, the delay since the last agency action was likewise only approximately one year as of the filing of the Complaint, and only six months have now elapsed since the second refusal was issued in January 2024. As in *Jahangiri*, Plaintiffs have identified no reason to believe that their application is being specifically delayed relative to other applications, and has not shown that a

granting of relief would not primarily result in the advancement of their application at the expense of others. *Id.* at *11-12. Thus, even though the delay is having some human impacts such that the third and fifth factors slightly favor Plaintiffs, where the first, second, and fourth factors strongly favor the State Department, the Court does not find that Plaintiffs have stated a plausible claim for relief based on unreasonable delay and will thus grant the Motion to Dismiss. *See id.* at *12.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Motion to Dismiss will be GRANTED.

Date: September 4, 2024

THEODORE D. CHUANG
United States District Judge